IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bureau of Consumer Financial Protection, | ) | |
| | ) | Case No. 1:20-cv-06879 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Judge Georgia N. Alexakis |
| | ) | |
| FDATR, Inc., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT TUCCI'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On November 20, 2020, the Bureau of Consumer Financial Protection (Bureau) filed this case to hold Dean Tucci and his company, FDATR, Inc., accountable for violating consumer-protection laws by engaging in deceptive and abusive acts when telemarketing student loan debt-relief and credit-repair services to consumers nationwide.[1] Tucci declined to defend FDATR and on February 7, 2022, the Court entered default judgment against the company, which established FDATR's liability for violating the Telemarketing Sales Rule (TSR) and the Consumer Financial Protection Act (CFPA). The only remaining issue to be decided in this case is Tucci's liability, and to enter judgment against him.[2]

Tucci, now on his sixth counsel,[3] finally responded to the Bureau's Motion for Summary Judgment,[4] pending since October 14, 2022, with a procedurally infirm filing that cites to no

[1] ECF No. 1, Complaint.
[2] To comport with Judge Alexakis's procedures for summary judgment, the Bureau is resubmitting the following exhibits as the complete transcripts: Ex. 2 (Nov. 14, 2019, Investigational Hearing of Dean Tucci (Tucci IH Transcript)); Ex. 4 (July 21, 2022, Dep. of Dean Tucci (Tucci Dep.)); Ex. 5 (Mar. 1, 2022, Dep. of Desiree Keller (Keller Dep.)). All testimony cited is encompassed in the excerpted transcript pages attached as exhibits to the Bureau's Mot. for Summ. J., ECF No. 80.
[3] ECF Nos. 13, 19 at 4-5, 23, 26, 33, 41, 42, 43, 87, 101.
[4] ECF Nos. 80, 81.

record evidence and fails to dispute the material facts set forth by the Bureau to establish his liability.[5] In fact, Tucci's opposition admits many of the facts relied upon by the Bureau to prove his culpability. Otherwise, Tucci's opposition seeks to (a) relitigate FDATR's long-ago-established liability and (b) manufacture disputes with self-serving statements that are often focused on issues that are not material to his liability or conflict with his prior testimony under oath.

## I. THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT REGARDING TUCCI'S LIABILITY

It is well established that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[6] Here, there are no such facts.

Tucci's failure to dispute much of the Bureau's evidence of his liability leaves no genuine issue of fact to be decided at trial. Tucci's liability turns on his roles and activities associated with FDATR. To establish Tucci's liability for FDATR's TSR violations—taking illegal advance fees from consumers and engaging in deception—the Bureau must show that Tucci (1) is a "seller" who arranged for FDATR to telemarket its services or (2) substantially assisted FDATR when he knew or consciously avoided knowing that it engaged in the types of TSR violations asserted in this case.[7] To hold Tucci liable for FDATR's deceptive conduct under the CFPA, the Bureau must show that he is a "related person" and therefore a "covered person," notably that he was a "director, officer, or employee charged with managerial responsibility for" FDATR or a "shareholder [or] consultant . . . who materially participate[d] in" FDATR's affairs.[8] For

[5] ECF No. 102.
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[7] *See* ECF No. 80-1, Mem. in Supp. of Pl.'s Mot. Summ. J. (Pl.'s Mem.) at 11-14.
[8] *See* ECF No. 80-1, Pl.'s Mem. at 14-15.

individual liability to attach, the Bureau must also show that Tucci (1) participated in the acts or had the authority to control them and (2) (a) had knowledge of or was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud and intentionally avoided the truth or (b) knew that FDATR was taking advance fees.[9]

Tucci's opposition expressly admits that he was an owner and officer of FDATR and that he was responsible for handling all FDATR business practices.[10] Tucci's opposition also confirms that, after he "sold" FDATR to former co-defendant Kenneth Halverson in 2017, a sale for which he received no money,[11] Tucci "actually moved into FDATR," was a sales and marketing consultant for the company, and remained involved in advertising, marketing, and sales training.[12] Tucci's opposition repeatedly demonstrates his extensive knowledge of and involvement in the company as well as his authority over it. Tucci admits that until at least 2017 he controlled and was a signatory on FDATR's bank accounts, and he does not substantively dispute that he used FDATR's money to pay for his personal expenses and to fund a different company.[13] Tucci admits that he monitored FDATR's chargebacks with a long explanation as to why he did so.[14] Tucci does not dispute other indicia of his authority and control, including that (1) he installed security cameras in FDATR with video feeds in his office, (2) he had the ability to listen to all company phone calls, and (3) he had the ability to review all emails sent to or from FDATR email addresses. And Tucci does not dispute that he was the registrant and billing contact for FDATR's website.

---

[9] *See* ECF No. 80-1, Pl.'s Mem. at 15; *see also, Bureau of Consumer Fin. Prot. v. Commonwealth Equity Grp., LLC,* No. 20-cv-10991, 2024 WL 4362126, at *9 (D. Mass., September 30, 2024) (applying the same standard to the advance-fee provisions of the TSR).

[10] ECF No. 102, Def.'s Opp. to Pl.'s Mot. Summ. J. (Def.'s Opp.) at 5; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 8.

[11] ECF No. 102, Def.'s Opp. at 12; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶¶ 35-38.

[12] ECF No. 102, Def.'s Opp. at 12, 9-10; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶¶ 20, 21, 22.

[13] ECF No. 102, Def.'s Opp. at 10-11; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 25-28.

[14] ECF No. 102, Def.'s Opp. at 10; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 24.

Tucci's opposition also effectively admits that he had knowledge of or was recklessly indifferent to FDATR's illegal acts. With respect to FDATR's misrepresentations, Tucci either (a) confirms that the statements are false or unsubstantiated or (b) claims that the misrepresentations are taken out of context and blames the U.S. Department of Education, which does not create a bona fide dispute.[15] As to FDATR's violations of the TSR's advance-fee bans, Tucci confirms that the company charged consumers at or near the time of enrollment, as he had previously testified.[16] And he asserts that it is true that he "knew FDATR took up front fees from consumers."[17]

## II. TUCCI SEEKS TO RELITIGATE FDATR'S LIABILITY, BUT THE TIME FOR DEFENDING FDATR HAS LONG PASSED

In his opposition, Tucci endeavors to defend FDATR for the first time since this case was filed in 2020. The Court provided Tucci with ample opportunity to defend FDATR, but he declined to do so and now it is too late. After FDATR failed to answer the Complaint or otherwise defend itself, the Bureau requested that the Clerk of Court enter default against it.[18] The Court took the request under advisement and on September 22, 2021, entered a docket entry allowing any objections or responses to be filed by September 29, 2021[19]—nothing was filed. On October 5, 2021, the Court directed the Clerk to enter default, which was entered on October 6, 2021.[20] Tucci retained new counsel in October 2021 and during an October 20, 2021, status hearing the magistrate judge asked whether counsel would be moving to lift the default; counsel responded that he would not and that he only represented Tucci. The Bureau waited to seek a

[15] ECF No. 102, Def.'s Opp. at 14-16.
[16] ECF No. 102, Def.'s Opp. at 13; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶¶ 40-41.
[17] ECF No. 102, Def.'s Opp. at 12.
[18] ECF No. 34.
[19] ECF No. 36.
[20] ECF Nos. 38, 39.

judgment against FDATR, but when it became clear that Tucci did not intend to cooperate with these proceedings, the Bureau filed for default judgment, which was entered on February 7, 2022.[21] To date, Tucci has made no effort to vacate the default or default judgment, or properly defend FDATR.

In cases like this, where a party had the opportunity to defend a company and chose not to do so, the Court may use the liability established by default as a basis for an individual's liability.[22] In *Rewards Network Establishment Servs., Inc. v. Lajaunie*, for example, this district court entered default judgment against a defendant company that failed to appear through counsel in a breach of contract case.[23] The court then entered summary judgment against the owner, finding that the default judgment was an admission of the company's liability for material misrepresentations, which triggered the owner's agreement to be personally liable for the underlying contract.[24] Upholding the district court, the Seventh Circuit found that the default judgment established that the company's material misrepresentations breached the contract, and this proof triggered the owner's personal liability.[25] Here, the default judgement against FDATR establishes that it is liable for illegally collecting upfront fees from consumers in violation of the TSR (Counts I & II) and engaging in deception in violation of the TSR and CFPA (Counts III & IV).[26]

Even if, at this late stage, the Court allowed Tucci to litigate the merits of the Bureau's case against FDATR, Tucci cannot legitimately dispute the material facts underlying FDATR's

---

[21] ECF Nos. 45, 50.
[22] *See* ECF No. 80-1, Pl.'s Mem. at 9-10.
[23] 857 Fed.Appx. 856, 857 (7th Cir. 2021).
[24] *Id.* at 856-57.
[25] *Id*. at 858.
[26] ECF Nos. 45, 50.

liability, most of which are evidenced by FDATR's documents and Tucci's testimony.[27] When asked how the company attracted consumers, Tucci stated under oath that "[w]e'd run radio commercials and TV commercials. Consumers would reply to a toll-free number, and those calls would go into the [FDATR] calls center."[28] FDATR maintained a website using its assumed name, Federal Student Loan Relief, on which consumers could get information about the company,[29] that displayed its toll-free number and made representations like the following:

- How Can We Help You?
  Reduce or Eliminate Your Payments
  Lift IRS Tax Levies
  Stop Wage Garnishment
  Restore Financial Aid Eligibility
  Stop Threatening Collections Calls & Letters
  Improve Credit Scores

- Federal Student Loan Relief Can Cut Loan Payments in HALF

- Federal Student Loan Relief Can Improve Credit Scores – & Remove the I9 Rating[30]

---

[27] ECF No. 45-1, Mem. in Supp. of Pl.'s Mot. for Default J. against FDATR (Pl.'s Default J. Mem.). Tucci also protests that FDATR is not subject to the jurisdiction of the Bureau because it is a document preparation, tax preparation, and accounting firm, and that it is involved in student loan consolidation. But the Bureau's evidence patently shows that FDATR solicits consumers with student-loan debts using representations that its services will reduce or eliminate their loan payments and improve their credit scores, among other things, making it a provider of financial advisory services under the CFPA. *See infra* p.6 and note 29; ECF No. 45-1, Pl.'s Default J. Mem. at 11-13. To the extent that Tucci contends FDATR is not covered by the TSR because of a footnote in the final rulemaking commentary that the debt-relief provisions are not intended "to cover services or products that offer to refinance existing loans with a new loan as a way of eliminating the original debts, as such a process would result in a new extension of credit that replaces the existing debts rather than altering them" (Telemarketing Sales Rule; Final Rule, 75 Fed. Reg. 48458 (August 10, 2010) (codified at 16 C.F.R. pt. 310) n. 123.), Tucci is wrong. Whether a company offers a debt-relief service turns on the representations it makes in soliciting consumers and as discussed, (1) FDATR's representations include statements that its services will reduce or eliminate consumers' loan payments and even cut loan payments in half and (2) Tucci makes clear in his opposition that FDATR was not itself offering to extend, or extending, credit. *See Consumer Fin. Prot. Bureau v. IrvineWebWorks, Inc.,* No. 14-1967, 2016 WL 1056662, at *5-8 (C.D. Cal. Feb. 5, 2016); *see also*, *FTC v. American Financial Benefits Center, et at*., 324 F.Supp.3d 1067, 1081-1083 (N.D. Cal. 2018).

[28] ECF No. 80-4, Ex. 2 at 57:11-19 (Tucci IH transcript).

[29] ECF No, 102, Def.'s Opp. at 7.

[30] ECF No. 80-8, Ex. 6 at 1, 4, 7, 8 (Website Pages).

Tucci does not deny that the company made these representations or that he was the registrant of the website.[31] And he effectively concedes that the representations were either false or unsubstantiated.[32] Tucci also admits that FDATR took money from consumers at or shortly after enrollment. But he testified that files took three to six months to complete,[33] which means that fees were necessarily charged before the TSR's advance fee prerequisites were met.[34]

## III. TUCCI'S OPPOSITION SHOULD BE GIVEN NO WEIGHT BECAUSE IT DOES NOT COMPLY WITH COURT RULES, CITES NO RECORD EVIDENCE, AND MAKES ASSERTIONS THAT CONFLICT WITH HIS PRIOR SWORN TESTIMONY

Tucci's opposition simply does not meet the standards required by Rule 56(c), much less comport with Local Rules[35]—it consists primarily of narrative text in apparent response to the Bureau's Statement of Facts, cites to no record evidence, and fails to support any assertions with a declaration or affidavit.[36] The Court should, therefore, deem admitted all material facts set forth in the Bureau's Statement of Material Facts.[37] For these reasons alone, the Court should reject Tucci's protestations and enter summary judgment in favor of the Bureau.

[31] ECF No. 102, Def.'s Opp. at 7-8.
[32] ECF No. 102, Def.'s Opp. at 15-16; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 44-50.
[33] ECF No. 80-4, Ex. 2 at 72:1-5 (Tucci IH transcript).
[34] *See* ECF No.45-1, Pl.'s Default J. Mem. at 8-9; ECF No. 80-1, Pl.'s Mem. at 9.
[35] Fed. R. Civ. P. 56(c)1, 4; L.R. 56.1(b), (d), (e), (g).
[36] Tucci also submits the Declaration of Robby H. Birnbaum (Birnbaum Decl.), ECF No. 102-1, which presents expert testimony to the Court. *See Compania v. Tital Int'l*, 533 F.3d 555, 561 (7th Cir 2008) (testimony based on a person's special training or experience is properly classified as expert testimony). The Court should strike the Birnbaum Decl. because Tucci did not disclose this expert by April 14, 2022, the date agreed upon by the parties in their Joint Proposed Discovery Plan (ECF No. 29), and never disclosed any expert to the Bureau or the Court during discovery, which closed in August 2022, even after informing the Court that all discovery issues were resolved. *See Mannoia v. Farrow*, 476 F.3d 453, 456-57 (7th Cir. 2007) (upholding district court's striking of expert affidavit submitted with summary judgment motion where party had not disclosed expert during discovery).
[37] N.D. Ill. L.R. 56.1(b); *see Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (upholding district court's striking of party's argumentative and evasive response to movant's statement of facts); *see also, Keen v. Merck Sharp & Dohme Corp*., 819 Fed.Appx. 423, 424 (7th Cir. 2020) (response to statement of facts that was "'filled with improper and unsupported factual assertions,' 'baseless objections,' and inappropriate legal arguments" struck for failing to comply with local rules).

Tucci would fare no better if his assertions were set forth in an affidavit or declaration because he makes statements that either confirm or fail to dispute the Bureau's facts, as described above, or conflict with his prior testimony. In this circuit, "the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."[38] Tucci's opposition is replete with such contradictory statements that should be disregarded by the Court.

For example, Tucci states that "FDATR was not a successor company" to Teldebt Solutions.[39] Yet when asked whether Teldebt was still operating, he testified that "It ceased when we became, when I transferred and became FDATR."[40] Likewise, Tucci insists that it was not accurate for the Bureau to state that "FDATR operated in the same office space as Tel-Debt[,] under the same lease signed by Tucci for [Teldebt], employed many of [Teldebt's] former employees, and used the desks, computers, phones, phone system and video surveillance system."[41] But when asked what happened to Teldebt's employees when it ceased operating, he testified that "they moved over to FDATR."[42] And when asked whether FDATR was in the same office space as Teldebt and used the same desks, computers, phones, and phone systems, he testified "yes" to each one.[43] Tucci also testified that FDATR had office space under the same lease, signed by him, as Teldebt and used video cameras installed for Teldebt.[44]

Tucci's opposition appears to dispute that he drafted advertisements and telemarketing sales scripts for FDATR,[45] but his testimony tells a different story:

[38] *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020).
[39] ECF No. 102, Def.'s Opp. at 5;. 80-2; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 4.
[40] ECF 80-4, Ex. 2 at 13:13-17 (Tucci IH transcript).
[41] ECF No, 102, Def.'s Opp. at 5; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 5.
[42] ECF 80-6, Ex. 4 at 24:8-11 (Tucci Dep.).
[43] ECF 80-6, Ex. 4 at 28:16-29:2 (Tucci Dep.).
[44] ECF 80-6, Ex. 4 at 52:21-53:23; 61:2-11 (Tucci Dep.).
[45] ECF No. 102, Def.'s Opp. at 8; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 16.

> Q. When you were working with FDATR, either as an owner in 2014, or [a] consultant through 2019, April, May of 2019, what kinds of things did you do for FDATR? Did you ever write any scripts?
> A. Of course.
> Q. Did you write advertising scripts?
> A. Of course.
> Q. Did you write any of the scripts that the sales agent used?
> A. Yes.
> Q. Or any of the managers?
> A. Yes.
> Q. What kinds of scripts did the company have?
> A. It had sales scripts.
> Q. And, that was for speaking on the phone with customers?
> A. Yes.
> Q. Or for advertisements, okay.
> A. It was sales scripts, media.[46]

When addressing advance fees, Tucci contends that it is inaccurate for the Bureau to state "Defendant Tucci testified that FDATR spent at least three to six months to get a file completed and it always requested and received payment from customers for standard fees at or near the time of enrollment before it achieved any results."[47] Again, Tucci's own testimony compels a different conclusion—he testified that "it would typically take 3 to 6 months to get a file completed," a fee of a dollar was required to start a file, and additional fees were charged the same day the consumer called or within a month.[48]

As to the monetary relief entered against FDATR for consumer restitution and redress, Tucci contends with no basis, and without offering an alternative calculation, that the amount is wrong. In fact, the Bureau calculated redress by exporting a customer data spreadsheet with only information related to FDATR's student-loan customers from a system called StudentLogics. The spreadsheet contains a substantial amount of consumer personally identifiable information, which the Bureau is happy to provide to the Court for an in camera inspection if necessary.

---

[46] ECF 80-4, Ex. 2 at 51:5-52:17 (Tucci IH transcript).
[47] ECF No. 102, Def.'s Opp. at 13; *see also* ECF No. 80-2, Pl.'s Statement of Facts at ¶ 42.
[48] ECF 80-4, Ex. 2 at 72:1-5; 73:22-74:3, 74:6-10 (Tucci IH transcript).

****

The Court should grant the Bureau summary judgment against Tucci because both the Bureau's Motion and Tucci's Opposition show that there are no disputed issues of material fact upon which a reasonable jury could return a verdict for Tucci. And the Court should enter a judgment in the Bureau's favor identical to the relief the Court previously imposed against FDATR: injunctive relief to prevent future consumer harm; a restitution amount of $2,117,133.28; and a civil penalty of $41,123,897.[49]

Dated: December 18, 2024

Respectfully submitted,

/s/ Carmen Christopher
Carmen L. Christopher (CA Bar No. 231508)
Telephone: (202) 754-0329
carmen.christopher@cfpb.gov
Kristina D. Betts (AZ Bar No. 024859)
Telephone: (202) 834-2723
kristina.betts@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington DC, 20552

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

[49] ECF. No. 50, Default J. and Order Against FDATR, Inc., ECF No. 80-1, Pl.'s Mem. at 16-19.