UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, | |
| Plaintiff, | No. 20 CV 6879 |
| v. | Judge Georgia N. Alexakis |
| FDATR, INC., et al., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

In November 2020, the Bureau of Consumer Financial Protection ("Bureau")[1] commenced this civil action against FDATR, Inc., a telemarketing firm, and its principals, including defendant Dean Tucci. The Bureau already has secured a default judgment against FDATR for violating the Consumer Financial Protection Act ("the Act") and the Telemarketing Sales Rule ("the TSR") by misrepresenting its debt-relief and credit-repair services to consumers with student loans and made improper charges to those consumers. The only remaining question is whether Tucci is also liable for FDATR's actions. The Bureau has moved for summary judgment on that issue, and for the reasons provided below, that motion is granted.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] Now the Consumer Financial Protection Bureau.

matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.  Background

Tucci's response to the Bureau's motion for summary judgment does not include *any* citations to the record—as are required by Federal Rule of Civil Procedure 56(c)—despite the unusually ample time he was provided to respond.[2] He also failed to abide by local rules requiring him to respond to the Bureau's Local Rule 56.1(a)(2) statement, *see* [80-2], paragraph by paragraph, and to explain whether each fact is disputed, and if disputed, to cite the evidentiary material that disputes the fact. Local Rule 56.1(b)(2), (e)(2)–(3) (N.D. Ill.); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) (explaining that the Northern District's Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts"). Given Tucci's failure to comply with these rules, the Court considers the properly supported facts in the Bureau's filings undisputed for the purpose of summary judgment, and refers to them here. *See* Fed. R. Civ. P. 56(e)(2);

---

[2] The Bureau moved for summary judgment on October 14, 2022. [80]. The Bureau noted on December 13, 2022, that Tucci's response was already 21 days late, despite an extension. [84] at 1. When the matter was assigned to this Court in August 2024, it gave Tucci a new deadline of October 8, 2024—almost two years after the motion was filed. [91]. Tucci was granted two further extensions, [96]; [100], and finally filed his response on November 21, 2024 [102].

N.D. Ill. L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). ("[A] district court may strictly enforce compliance with its local rules regarding summary judgment motions.").

The Court also relies on factual findings set forth in the default judgment order that has been entered already against FDATR, which, in turn, is supported by uncontested evidence. [45], [50]. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020).

Tucci formed FDATR in 2014, initially as its sole director, officer, and shareholder. [80-2] ¶ 3; [80-3] at 1–2. FDATR was[3] a "doc preparation company" that completed and filed loan consolidation paperwork on behalf of consumers with student loans with the federal Department of Education.[4] [80-2] ¶ 43; [80–4] at 96:3–4. In addition to founding the company, Tucci was responsible for FDATR's business practices, hiring and firing employees, training telemarketers, marketing FDATR's services, drafting training materials and telemarketing scripts, and the content of FDATR's website. [80-2] ¶¶ 8–14, 16–18; [80-4] 51:5–56-14:16; [80-6] 55:16–56:11; [80-7] 45:1–46:3.

---

[3] FDATR was dissolved on September 29, 2020, by the State of Illinois for failure to file an annual report or pay an annual franchise tax. [80-3] at 19.

[4] Borrowers can complete and file the loan-consolidation paperwork themselves, and the Department of Education charges no fees for loan consolidation. *See* https://studentaid.gov/loan-consolidation/ (accessed January 3, 2025).

3

Tucci exerted considerable control over FDATR's operations. For example, he monitored telemarketers via cameras and a phone system that allowed him to listen to company phone calls. [80-2] ¶¶ 20–21; [80-6] 57:23–61:11. Tucci could also view all emails sent from FDATR email addresses and routinely reviewed emails to FDATR managers. [80-2] ¶¶ 22–23; [80-6] 62:20–65:16; [80-7] 25:9–26:1. He also controlled FDATR's finances and monitored credit card charges disputed by customers. [80-2] ¶¶ 24–25; [80-6] 71:19–72:5, 84:24–85:6, 129:11–16.

FDATR enrolled more than 6,000 customers between 2014 and 2019, who collectively paid more than $2 million to the company. [80-2] ¶ 53; [80-16] ¶¶ 16–17. FDATR charged these customers either $499 within two weeks of enrollment or $600 paid in installments over three to six months beginning days after enrollment. [80-2] ¶ 41; [80-4] 71:17–76:4. FDATR would immediately charge at least $1, ostensibly to validate the payment method. [80-2] ¶ 40; [80-4] 73:20–76:4. According to Tucci's testimony at the Bureau's investigational hearing, it took FDATR between three and six months to "get a file completed." [80-2] ¶ 42; [80-4] 72:1–17; 93:18–94:16, 96:3–14. In other words, FDTAR requested and received fees from consumers before it had provided any services. [50] ¶ 13.

Through its telemarketers and advertisements, FDATR told consumers that it would eliminate their student-loan payments or cut their payments in half, and that it would improve their credits scores or remove negative ratings from their credit reports. [50] ¶ 15. But, according to Tucci himself, loan consolidation does not eliminate payments and can even result in higher monthly payments. [80-2] ¶ 44;

4

[80-4] 82:18–83:7. And because FDATR never tracked what happened to customers' loan payments or credit scores, FDATR and Tucci did not know what happened to customers' payments or scores. [80-2] ¶ 47; [80-4] 83:2–7; [80-6] 117:23–118:7, 126:21–24. Tucci also conceded at his deposition that, despite FDATR's representations, the company provided no services that would improve customers' credit scores or remove negative ratings from credit reports. [80-2] ¶ 49; [80-6] 115:12–120:6; [50] ¶ 17.

On July 15, 2017, Tucci transferred ownership of FDATR to Kenneth Wayne Halverson[5] to protect the company's assets from potential liability Tucci faced in other legal proceedings. [80-2] ¶ 29; [80-4] 42:10–24, 99:16–100:17. Halverson paid Tucci no money for FDATR, and Tucci stayed on as a "paid consultant," performing the same role in the company he had always performed and continuing until April 2019. [80-2] ¶¶ 30, 36, 38; [80-4] 42:15–22, 43:18–23; *see also* [102] at 12.

On October 13, 2017, the State of Illinois sued Tucci and FDATR for deceptive business practices for engaging in the misrepresentations described above. [80-2] ¶ 51; [80-12]. As a defendant in the state lawsuit, Tucci was personally served with a summons and copy of the complaint. [80-2] ¶ 52; [80-13]. FDATR continued taking money from consumers until May 2019. [80-2] ¶ 39; [80-16] ¶ 14.

The Bureau sued FDATR and Tucci in November 2020. [1]. Because FDATR did not answer or otherwise defend against the action, the Bureau secured a default

---

[5] Halverson was initially a codefendant in this matter but has since passed away and has been voluntarily dismissed. [17]; [18].

judgment against FDATR in February 2022. [50]. Relevant here, the previous court assigned to this matter made several findings:

First, that FDATR was a "covered person" under the Act and a "seller" or "telemarketer" engaged in "telemarketing" and the provision of "debt relief service[s]" under the TSR. *Id.* ¶ 10; 12 U.S.C. § 5481(6); 16 C.F.R. § 310.2(o), (dd), (ff), (gg). Next, that FDATR violated the TSR by improperly requesting and receiving payments for debt-relief and credit-repair services before it was allowed to do so and by charging fees disproportionate to the amount saved. [50] ¶ 13; 16 C.F.R. § 310.4(a)(2), (5)(i). Similarly, that FDATR violated both the Act and the TSR by misrepresenting that it would eliminate consumers' student-loan payments or cut them in half, improve consumers' credit scores, and remove negative credit status codes or ratings, and that these representations were material and likely to mislead consumers. [50] ¶¶ 15–17; 12 U.S.C. §§ 5531(a), 5536; 16 C.F.R. § 310.3(a)(2)(iii) and (x). Finally, that the Bureau had established that the financial harm to consumers was at least $2,117,133.28, the amount customers paid FDATR minus refunds issued. [50] ¶ 20.

Based on these findings, the previous court issued an order imposing permanent injunctive relief, requiring FDATR to make restitution equal to the financial harm and to pay a civil money penalty of $41,123,897. *Id.* ¶ 22.

III. **Analysis**

    A.    **FDATR's Liability**

In opposing the Bureau's motion for summary judgment directed toward him, Tucci inexplicably begins by arguing that FDATR was never subject to the Bureau's

6

jurisdiction. [102] at 4.[6] Tucci also appears to argue that FDATR did not actually violate the Act or the TSR. *See id.* at 13-18. But these arguments—even assuming Tucci can make them on FDATR's behalf[7]—come nearly three years too late. The February 2022 default judgment order found that FDATR violated both the Act and the TSR. [50]. Tucci concedes that he declined to challenge the default judgment at the time, *see* [102] at 4, and no motion to vacate the judgment against FDATR has been filed since then. Any arguments regarding FDATR's liability, or the Bureau's authority to bring suit against the company, are thus forfeited, if not outright waived. Additionally, the law-of-the-case doctrine establishes a presumption that earlier rulings, like the default judgment, will stand absent unusual circumstances, like substantial new evidence, a change in the law, or clear error. *See Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024). But Tucci identifies no new evidence, no new case, and no error. FDATR's liability is therefore settled.

The only question remaining is whether there is any genuine dispute of material fact about whether FDATR's liability extends to Tucci. For the reasons the Court lays out next, there is not, and it does.

---

[6] Tucci's briefing does not include pagination, so the Court uses the ECF page numbers at the top of the filing.

[7] *See Rewards Network Establishment Servs., Inc. v. Lajaunie*, 857 F. App'x 856, 857 (7th Cir. 2021) (where judgment had been entered against company, individual owner had "no standing" to challenge the judgment, challenge the denial of the company's motion to vacate its default, and represent the company as its advocate) (citing *In re IFC Credit Corp.*, 663 F.3d 315, 318 (7th Cir. 2011).

7

B.  **Tucci's Liability Under the TSR**

A "person" is liable under the TSR when they "provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4" of the TSR. 16 C.F.R. § 310.3(b). As the default judgment established, FDATR is a seller and telemarketer that violated §§ 310.3(a) and 310.4(a) of the TSR. [50] ¶¶ 13–15. The remaining questions are (1) whether Tucci "provided substantial assistance or support" to FDATR and (2) whether he knew or consciously avoided knowing that FDATR was engaged in those violations. The answer is yes to both.

It is uncontested that Tucci was substantially involved in FDATR's operations, even after he transferred ownership of the company: he hired, fired and trained the telemarketers; drafted the scripts and marketing materials; and controlled the company finances. It is hard to imagine more substantial assistance to FDATR's activities than this; Tucci directed the whole operation.

Because of this degree of control over FDATR operations, there is also no genuine dispute of fact that Tucci knew or should have known that FDATR was engaged in violations of the TSR. As the Seventh Circuit recently confirmed, "[s]ubjective knowledge that actions violate the TSR is not necessary for liability to attach." *Fed. Trade Comm'n v. Day Pacer LLC*, 23-3310, 2025 WL 25217, at *4 (7th Cir. Jan. 3, 2025). Instead, the Bureau must only show that Tucci had "actual knowledge or knowledge fairly implied on the basis of objective circumstances that

8

such act is unfair or deceptive and is prohibited by such rule." *Id.* (quoting 15 U.S.C. § 45(m)(1)(A)).

Tucci knew what FDATR customers were being told: he wrote the scripts. And at his investigational hearing and in his deposition testimony, Tucci acknowledged that he knew that there was no basis for the representations that FDATR made to consumers: that their payments would be halved, their debt would vanish, or their credit scores would improve. It is thus more than fair to imply to him the knowledge that these representations were deceptive and prohibited. *Day Pacer LLC*, 2025 WL 25217, at *4. Tucci also concedes that he knew that FDATR took fees from consumers before they saw any change to their payments or credit. [102] at 12 ("Tucci knew that FDATR took up front fees from consumers."). Tucci also knew or should have known that this practice was prohibited, especially after he and FDATR were sued by the State of Illinois for the same conduct. Tucci is thus liable under the TSR.

Tucci's arguments against TSR liability are perfunctory and unconvincing. Tucci asserts that he was not responsible for FDATR advertisements or telemarketing, [102] at 7–9, and that it is "not accurate" to say his role remained the same after the transfer to Halverson, *id.* at 12. But, as discussed above, Tucci cannot raise a genuine factual dispute because he fails to support these assertions with record evidence, and Tucci cites no legal authority whatsoever in support of his positions. It is not the Court's obligation to research and develop legal arguments for parties, *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018), and Tucci's unsupported arguments against liability are waived, *see Schaefer v. Universal*

9

*Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Moreover, the Bureau's statement of material facts is not only supported by record citations, as required procedurally, but based on the Court's review of the underlying evidence, the Bureau's citations are substantively accurate as well. The Court therefore has little difficulty concluding that, based on the properly supported facts in the Bureau's filings, there is no genuine dispute as to any material fact concerning Tucci's liability under the TSR.

### C. Tucci's Liability Under the Act

The Act prohibits "any covered person" from "engag[ing] in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). The default judgment establishes that FDATR is a covered person and that its actions violated § 5536(a)(1)(B). [50] ¶¶ 10, 17. The Act extends to "related person[s]," who include (1) "any director, officer, or employee charged with managerial responsibility for … such covered person"; and (2) "any shareholder, consultant … or other person … who materially participates in the conduct of the affairs of such covered person." 12 U.S.C. § 5481(25)(B), (C). The undisputed evidence demonstrates that for the relevant period of FDATR's violations Tucci was either an officer or a consultant materially participating in FDATR's affairs, so he is subject to the Act.

The Seventh Circuit does not appear to have addressed the components of individual liability under the Act, but at least two other federal appeals court have explained that "[a]n individual may be liable for corporate violations of the Act if (1)

10

he participated directly in the deceptive acts *or* had the authority to control them and (2) he had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1193 (9th Cir. 2016) (internal quotation marks omitted); *see also Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1174 (10th Cir. 2022) (adopting the *Gordon* test). Again, there is no dispute that Tucci participated in FDATR's deceptive acts—he wrote the scripts and advertisements that made misleading promises to consumers—or that he exercised significant control over the company. And Tucci had knowledge of the deceptions. He is therefore also liable under the Act.

As noted above, Tucci does not support any of his arguments against liability under the Act with legal authority, and any arguments are thus waived. *Schaefer*, 839 F.3d at 607.

### D. Remedies

Based on the uncontested record, the Court concurs with the finding in the default judgment order against FDATR that the financial harm to consumers from the company's violations was at least $2,117,133.28, the amount paid by consumers to the company minus refunds paid to customers. [50] ¶ 20; [80-16] ¶ 16.

The Court also finds that the Bureau has demonstrated that an injunction is appropriate to prevent Tucci from engaging in similar future conduct. *See* 12 U.S.C. § 5565(a)(2)(G) (permitting courts to impose "limits on the activities or functions of the person"). As the Bureau notes, an injunction is particularly appropriate where "even after the State of Illinois sued Tucci and FDATR in 2017 for the same illegal

conduct at issue in this action, Tucci and his company continued to deceive consumers, violate the TSR, and collect unlawful fees." [80-1] at 16.

The Act further allows the Court to impose restitution and requires the Court to impose a civil money penalty on a person who violates federal consumer financial law. [80-1] at 17; 12 U.S.C. §§ 5565(a)(2)(C) and (H); 12 U.S.C. § 5565(c)(1). In light of this authority, the Bureau requests that the Court impose restitution in the amount of $2,117,133.28 and a civil money penalty in the amount of $41,123,897. However, in *Consumer Financial Protection Bureau v. Consumer First Legal Grp., LLC*, the Seventh Circuit concluded that the Supreme Court's decision in *Liu v. SEC* limited restitution under § 5565(a) to a firm's *net profits*, rather than the harm to consumers. *See* 6 F.4th 694, 710–11 (7th Cir. 2021) (citing *Liu v. SEC*, 591 U.S. 71, 84–85 (2020)). And the Supreme Court's more recent decision in *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), suggests that the sort of civil money penalty the Bureau wishes the Court to impose here may implicate Tucci's Seventh Amendment right to trial by jury. The Court therefore requires more briefing on the topic of remedies before it can enter a judgment against Tucci ordering him to pay restitution and imposing a civil penalty.

**IV.    Conclusion**

For the foregoing reasons, the Bureau's motion for summary judgment [80] is granted as to the issue of Tucci's liability.

The Bureau shall submit a legal memorandum addressing restitution and civil money penalties in this matter in light of *Consumer First* and *Jarkesy* by 2/11/25.

Tucci shall file a response on the issue of remedies by 3/11/25. Any reply from the Bureau should be filed by 3/25/25. Within 30 days, the Bureau is also directed to submit a Word version of its proposed injunction order to the Court's proposed order mailbox.

                                                                                            Georgia N. Alexakis
                                                                                            United States District Judge

Date: 1/10/25