IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bureau of Consumer Financial Protection, | ) | |
| | ) | Case No. 1:20-cv-06879 |
| *Plaintiff,* | ) | |
| | ) | Judge Georgia N. Alexakis |
| v. | ) | |
| | ) | |
| FDATR, Inc., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S POST-SUMMARY JUDGMENT MEMORANDUM ON RESTITUTION AND CIVIL MONEY PENALTIES**

Plaintiff Bureau of Consumer Financial Protection (Bureau) submits this brief in response to the Court's request for additional briefing regarding restitution and civil money penalties.[1] Specifically, upon granting summary judgment, the Court asked the Bureau to address (1) whether the Supreme Court's holding in *Liu v. SEC* restricts restitution to FDATR's net profits, rather than the total harm to consumers[2] and (2) whether the Supreme Court's holding in *SEC v. Jarkesy* suggests that the Bureau's request that the Court impose a civil money penalty infringes on the Seventh Amendment right to a jury trial.[3] The answer to both of these questions is no.

For the reasons detailed below, the Court should award the Bureau restitution in the full amount of consumer harm because the Bureau seeks legal restitution and not equitable relief. And the Court may assess, without a jury, an appropriate civil penalty for Tucci's conduct, because the Court has already determined that there are no triable issues as to Tucci's liability

[1] ECF No. 106, Mem. of Opinion and Order at 12-13.
[2] 591 U.S. 71 (2020).
[3] 603 U.S. 109 (2024).

and Congress assigned the determination of the penalty imposition and amount to the Court through the Consumer Financial Protection Act (CFPA).

## ARGUMENT

The CFPA authorizes the Bureau to "commence a civil action against [any person that violates a Federal consumer financial law] to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law."[4] In addressing the relief available in such actions, the CFPA provides that the "court … shall have jurisdiction to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law," including restitution, refund of moneys, payment of damages, and civil money penalties.[5]

### I. The Court Should Award Legal Restitution Equal to Consumer Harm

The amount of restitution awarded in this case should not be limited to net profits because the Bureau seeks legal, rather than equitable, restitution.[6] In *Liu v. SEC*, the Supreme court addressed the scope of equitable relief available in an SEC civil enforcement action and held that an award of disgorgement (a type of equitable relief) may not exceed a firm's net profits.[7] Then, in *CFPB v. Consumer First Legal Group*, the Seventh Circuit interpreted *Liu*'s holding to apply "to all categories of equitable relief"—including what it understood to be the

---

[4] 12 U.S.C. § 5564(a).
[5] 12 U.S.C. § 5565(a)(1), (a)(2)(B), (C), (H).
[6] Although the Bureau initially referred to its restitution claim as "equitable restitution" in its summary judgment opening brief, it subsequently submitted a Notice of Errata changing those references to "legal restitution." ECF No. 80-1, Pl.'s Summ. J. Mem. at 16; ECF No. 81, Pl.'s Notice of Errata. In any event, as the Ninth Circuit explained *CFPB v. CashCall, Inc*., "whether the relief being sought was equitable or legal 'depends not on the [Bureau's] characterization, but rather on the nature of the underlying remedies sought.'" 124 F.4th 1209, 1218 (9th Cir. 2025) (quoting *CFPB v. CashCall, Inc*., No. CV 15-7522-JFW (RAOX), 2023 WL 2009938, at *7 (C.D. Cal. Feb. 10, 2023)).
[7] *Liu*, 591 U.S. at 86-87.

district court's award of equitable restitution under the CFPA.[8] The Seventh Circuit, however, did not limit all "restitution under § 5565(a) [of the CFPA] to a firm's net profits."[9] Indeed, the CFPA authorizes the Bureau to seek both legal and equitable relief,[10] and neither *Liu* nor *Consumer First Legal Group* apply to a legal restitution award like the one the Bureau seeks here.

As explained by the Supreme Court, restitution can be either a legal or an equitable remedy, depending on the nature of the remedy sought.[11] Restitution is legal in nature where it "impos[es] a merely personal liability upon the defendant to pay a sum of money," but equitable where the plaintiff seeks money or property "identified as belonging in good conscience to the plaintiff [and that] could clearly be traced to particular funds or property in the defendant's possession," typically "in the form of a constructive trust or an equitable lien."[12] The Bureau does not seek the return of money or property identified as belonging in good conscience to consumers that can be traced to particular funds or property in Tucci's possession. Rather, the Bureau seeks a judgment imposing personal liability to pay a sum of money (i.e., legal restitution). Because the Court found that Tucci violated the CFPA and TSR, he should be held personally liable for paying a sum of money to provide consumer redress for those violations—namely, the amount of money consumers paid to FDATR minus refunds.

Remedies like the one sought here are legal in nature and, therefore, are properly based on the defendant's net revenues, not its net profits. In *Consumer First Legal Group*, the district court awarded the Bureau restitution, without identifying whether it was equitable or legal relief,

[8] 6 F.4th 695, 710 (7th Cir. 2021).
[9] ECF No. 106, Mem. of Opinion and Order at 12-13.
[10] 12 U.S.C. § 5565(a).
[11] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).
[12] *Id.* at 213-14 (citations omitted); *accord Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1121-22 (10th Cir. 2004).

based on net revenues.[13] The Seventh Circuit vacated the award after concluding that the district court had "understood itself to be awarding equitable relief"—which the Seventh Circuit held must be limited to net profits in light of *Liu*.[14] On remand, the district court noted that the Seventh Circuit's opinion "[did] not … foreclose[] an award of legal restitution as a possible remedy" and found that the Bureau's restitution claim was legal rather than equitable in nature.[15] While the Bureau had previously characterized its restitution claim as equitable, the district court explained that because the claim was "against defendants generally and not one, identifiable fund or asset," it was appropriate to "recharacterize plaintiff's restitution claim as legal and award it based on defendants' net revenues consistent with the Supreme Court's decision in *Liu*."[16]

Other courts have similarly analyzed the Bureau's claims for restitution imposing personal liability and have refused to limit such awards to a defendant's net profits. For example, in a recent decision involving unsecured, high-interest consumer loans that violated state usury laws, the Ninth Circuit addressed the restitution award sought by the Bureau and held that "the nature of the remedy is—and always has been—legal restitution: a money judgment to compensate borrowers for the money that [the defendant] collected but borrowers did not owe."[17] As the court recognized, such an award of legal restitution is not governed by *Liu* and "may be measured by the full amount lost by consumers rather than limiting damages to a defendant's net

---

[13] *CFPB v. Consumer First Legal Group, LLC*, 6 F.4th 694, 710 (7th Cir. 2021).

[14] *Id.* at 711; *see also FTC v. Credit Bureau Center*, LLC, 81 F.4th 710, 718 (7th Cir. 2023) (stating that the "commonality" between *Liu* and *Consumer First Legal Group* was "equity" and that the district court in *Consumer First Legal Group* "had granted only equitable relief").

[15] *CFPB v. The Mortgage Law Group, LLP*, No. 14-CV-513-WMC, 2022 WL 3027031, at *2-3 (W.D. Wis. Aug. 1, 2022).

[16] *Id.* at *3. While the district court ordered legal restitution based on net revenues, it decreased the amount by 50% on the basis that the Seventh Circuit previously found that the defendants' conduct was not reckless for the purposes of calculating the civil money penalty. The Bureau appealed the 50% reduction, arguing that scienter is irrelevant to the calculation of legal restitution and that the defendants should return to consumers all money they had no legal right to take. The case settled while the appeal was pending.

[17] *CFPB v. CashCall, Inc.*, 124 F.4th 1209, 1218 (9th Cir. 2025).

profits."[18] Accordingly, the Ninth Circuit upheld an award of legal restitution using net revenues, which included all interest and fees paid by any consumer without any deduction for the defendants' expenses.[19]

Consistent with these cases, and as authorized by the CFPA, here the Bureau seeks legal restitution to redress harmed consumers.[20] With respect to the Defendants' student-loan debt-relief and credit-repair services, all fees received from consumers are associated with Defendants' unlawful conduct—taking fees from consumers before legally permitted to do so and engaging in deception. Therefore, the appropriate measure of restitution is the amount of money required for full consumer redress—gross revenues consisting of the total amount consumers paid FDATR for its services, less money already refunded to consumers.[21] The customer relationship management tool used by FDATR, Student Logics, shows that this amount is $2,117,133.28.[22] This amount should be awarded as restitution. Alternatively, the Court may award $2,117,133.28 as a "refund of moneys"[23] or "payment of damages or other monetary relief," other forms of relief expressly authorized under the CFPA.[24] And Tucci should be held

---

[18] *Id.* at 1218 (internal quotation marks omitted).
[19] *Id*. at 1218-19 (defendant was allowed to deduct amount of loan principal paid to consumers but not business expenses, interest, or fees).
[20] 12 U.S.C. 5565(a)(2)(C); *see, e.g., CFPB v. CashCall, Inc.*, 35 F.4th 734, 750 (9th Cir. 2022) (citations omitted) (stating that restitution is a remedy under the CFPA and "it serves to ensure that consumers are made whole when they have suffered a violation of the statute").
[21] *See* ECF No. 80-1, Mem. in Supp. of Pl.'s Mot. Summ. J. (Pl.'s Summ. J. Mem.) at 16-17; ECF No. 45-1, Mem. in Supp. of Pl.'s Mot. Default J. Against FDATR (Pl.'s Default J. Mem.) at 15-16.
[22] *See id*.
[23] *See, FTC v. Credit Bureau Center, LLC*, 81 F.4th at 718 (awarding restitution based on the defendant's net revenue because Section 19 of the FTC Act "permits all forms of redress to make consumers whole, including "the refund of money").
[24] 12 U.S.C. § 5565(a)(2)(B), (E).

jointly and severally liable with FDATR for payment of the $2,117,133.28 amount, such that the Bureau would not recover an amount greater than the total consumer harm.[25]

## II. Imposing Civil Money Penalties on Tucci Does Not Infringe on his Seventh Amendment Right to Trial by Jury

The CFPA provides that "[a]ny person that violates, through any act or omission, any provision of Federal consumer financial law shall forfeit and pay a civil penalty…."[26] The CFPA further authorizes the Court to assess and determine the amount of the civil penalty, stating that "[t]he court … shall have jurisdiction to grant … relief," including "civil money penalties."[27] Here, the Court found that there are no triable issues of fact as to Tucci's liability and Tucci violated federal consumer financial law. Therefore, the CFPA answers the question of whether a civil money penalty should be imposed: Tucci is required to pay a civil money penalty and the CFPA expressly gives the Court the authority to impose one. There is nothing for a jury to decide on this question.

The Court is authorized to determine the amount of the penalty. Under Supreme Court precedent, when a federal agency brings an action under a statute through which Congress authorizes trial judges to assess the amount of a civil penalty, the courts can do so without infringing on the Seventh Amendment right to a jury trial.[28] In *Tull v. United States*, the Supreme Court, addressing civil penalties imposed under the Clean Water Act, held that "the Seventh Amendment required that petitioner's demand for a jury trial be granted to determine his

[25] On February 7, 2022, the Court imposed a judgment of monetary relief against FDATR in the amount of $2,117,133 for the purpose of providing redress to affected consumers. ECF 50 ¶ 31. FDATR has not paid any portion of this amount.
[26] 12 U.S.C. § 5565(c)(1).
[27] 12 U.S.C. § 5565(a)(1), (a)(2)(H).
[28] *Tull v. U.S.*, 481 U.S. 412 (1987).

liability, but that the trial court and not the jury should determine the amount of penalty, if any."[29]

The Supreme Court explained:

> The legislative history of the 1977 Amendments to the Clean Water Act shows … that Congress intended that trial judges perform the highly discretionary calculations necessary to award civil penalties after liability is found …. Congress' assignment of the determination of the amount of civil penalties to trial judges therefore does not infringe on the constitutional right to a jury trial. Since Congress itself may fix the civil penalties, it may delegate that determination to trial judges. In this case, highly discretionary calculations that take into account multiple factors are necessary in order to set civil penalties under the Clean Water Act. These are the kinds of calculations traditionally performed by judges. We therefore hold that a determination of a civil penalty is not an essential function of a jury trial, and that the Seventh Amendment does not require a jury trial for that purpose in a civil action.[30]

In short, since Congress itself can set the penalty amount, it can appropriately delegate the determination of the penalty amount to judges, and the Clean Water Act delegated that determination to judges. Indeed, such discretionary determinations based on multiple factors are the kind of calculations typically performed by judges.[31]

As with the Clean Water Act provision at issue in *Tull*, through the CFPA, Congress assigned the determination of the amount of the civil penalty to the courts and set forth factors for judges to consider.[32] Therefore, the Court may determine the amount of the civil penalty to be assessed against Tucci.

---

[29] *Id.* at 427.
[30] *Id.* at 425-27 (citations omitted). *See also SEC v. Ferrone*, 188 F. Supp. 3d 709, 716 (N.D. Ill. 2015) (rejecting argument that defendant was entitled to a jury trial before a civil penalty could be imposed because the plain language in the relevant statutes authorized the court to impose civil penalties).
[31] *Tull v. U.S.*, 481 U.S. at 427.
[32] 12 U.S.C. § 5565(a)(1), (a)(2)(H), (c). Because the CFPA expressly assigned this determination to the courts, there is no need to consider the legislative history.

*SEC v. Jarkesy* does not change this conclusion.[33] In *Jarkesy*, the SEC levied civil penalties after adjudicating the matter in its administrative court.[34] The Supreme Court held that a defendant is entitled to a jury trial on liability when the SEC seeks civil penalties; therefore, such actions must be brought in federal court rather than an administrative tribunal.[35] Because this case was brought in federal court, *Jarkesy* is inapplicable.[36] As discussed above, in *Tull*, the Supreme Court specifically held that the right to a jury trial does not extend to the assessment of civil money penalties where, as here, Congress assigned the determination of the amount of the civil penalty to the courts and set forth factors for judges to consider.[37] Courts have consistently recognized that nothing in *Jarkesy*—which focused on the separate question of when a jury trial right exists for questions of liability—abrogated that well-settled holding in *Tull*.[38]

To calculate the appropriate civil money penalty to assess against Tucci, the Court must determine (1) the appropriate statutory penalty tier to apply to Tucci's conduct,[39] (2) the

---

[33] *SEC v. Jarkesy*, 603 U.S. 109 (2024).
[34] *Id.* at 115, 119.
[35] *Id.* at 125, 136, 140.
[36] In federal court, the right to a jury trial is not without limitations. Indeed, it is well-established that district courts may enter summary judgment without infringing the Seventh Amendment's right to a jury trial, as the Court did here in determining liability on the Bureau's claims. *See Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 321-22 (1902) (summary judgment does not violate the Seventh Amendment); *Ex Parte Peterson*, 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined."); *Parklane Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 336 (1979) (noting that procedures like directed verdict, summary judgment, and partial retrial do not violate the Seventh Amendment).
[37] Notably, the Supreme Court's decision in *Jarkesy* extensively cites *Tull*.
[38] *SEC v. Halitron, Inc.*, No. 24-1052, 2025 WL 678776, at *4 (2d Cir. Mar. 3, 2025) (recognizing that "Jarkesy addressed a different Seventh Amendment question" and "did not abrogate *Tull*"); *SEC v. TKO Farms, Inc.*, No. 8:22-CV-00941-RGK-KES, 2024 WL 4896204, at *1 (C.D. Cal. Sept. 20, 2024) (reasoning that *Jarkesy*'s "holding that parties may have the right to a jury trial for liability would not abrogate *Tull's* holding that parties have no right to a jury trial for remedies").
[39] The CFPA provides for three statutory penalty tiers, escalating based on the degree of scienter behind the conduct: Tier 1 for ordinary violations; Tier 2 for reckless violations; and Tier 3 for knowing violations. 12 U.S.C. § 5565(c)(2).

applicable penalty amount for the tier,[40] (3) the number of violations (here the Bureau recommends using the number of customers with each customer representing a violation); and (4) consider the statutory factors listed in the CFPA.[41] With respect to the penalty tier, Tucci's violations warranted at least a Tier 1 penalty until October 16, 2017, the date by which both Tucci and FDATR had been served with the State of Illinois' Complaint, at which point he was on notice of the illegal conduct at issue in this case. After that date, his violations were reckless, warranting a Tier 2 penalty.[42] As to the penalty tier amount and number of violations, the Bureau analyzed customer data from Student Logics to calculate a penalty of $41,123,897:

- Between September 16, 2014, and November 1, 2015, the number of new customers enrolled was at least 2,228 and the effective Tier 1 penalty amount was $5,000 per violation—multiplying 2,228 by $5,000 results in a penalty amount of $11,140,000;

- Between November 2, 2015, and October 16, 2017, the number of new customers enrolled was at least 3,587 and the effective Tier 1 penalty was $6,323 per violation—multiplying 3,587 by $6,323 results in a penalty amount of $22,680,601; and

- Between October 17, 2017, and January 22, 2019, the number of new customers enrolled was at least 231 unique customers and the effective Tier 2 penalty amount was $31,616 per violation—multiplying 231 by $31,616 results in a penalty amount of $7,303,296.

[40] For violations that occurred before November 2, 2015, the maximum civil penalty amounts are $5,000 for Tier 1 violations, $25,000 for Tier 2 violations, and $1,000,000 for Tier 3 violations. For violations that occurred on or after November 2, 2015, the civil penalty amounts are adjusted for inflation each year. The maximum penalty amounts applicable when the Bureau filed for summary judgment in 2022 were $6,323 for Tier 1, $31,616 for Tier 2, and $1,264,622 for Tier 3 violations. 12 U.S.C. §§ 5564(a), 5565(a) & (c); 12 C.F.R. § 1083.1. The maximum civil penalty amounts for each tier have increased since 2022. 12 C.F.R. § 1083.1. While this may justify higher penalties, the Bureau is not requesting an increase beyond the amount requested in its summary judgment motion.

[41] 12 U.S.C. § 5565(c)(3).

[42] *See* ECF No. 80-1, Pl.'s Summ. J. Mem. at 16-17.

None of the CFPA's statutory factors change these calculations.[43] Therefore, the Bureau asks the Court to award a civil money penalty of $41,123,897.[44]

Dated: March 13, 2025

Respectfully submitted,

/s/ Carmen Christopher
Carmen L. Christopher (CA Bar No. 231508)
Telephone: (202) 754-0329
carmen.christopher@cfpb.gov
Kristina D. Betts (AZ Bar No. 024859)
Telephone: (202) 834-2723
kristina.betts@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington DC, 20552

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

[43] *See* ECF No. 80-1, Pl.'s Summ. J. Mem. at 18-19.
[44] This penalty amount should not be imposed jointly and severally with FDATR because the penalty amounts should be independently assessed against each Defendant based on that Defendant's conduct.