IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bureau of Consumer Financial Protection, | ) | |
| | ) | Case No. 1:20-cv-06879 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Judge Georgia N. Alexakis |
| | ) | |
| FDATR, Inc., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS POST-SUMMARY JUDGMENT MEMORANDUM ON RESTITUTION AND CIVIL MONEY PENALTIES**

In granting the Bureau summary judgment, the Court found Defendant Tucci liable for violations of the Telemarketing Sales Rule (TSR) and the Consumer Financial Protection Act (CFPA). At the Court's request, the Bureau submitted a memorandum addressing restitution and civil money penalties, which explains that (1) *Liu v. SEC*[1] applies only to equitable restitution and does not limit the amount of legal restitution that the Bureau can recover in this action, and (2) *SEC v. Jarkesy*[2] did not change the principle announced in *Tull v. United States*,[3] which makes clear that the Court is authorized to assess a civil penalty against Tucci. Tucci's arguments do nothing to refute the Bureau's position. The Court should therefore award legal restitution in the full amount of consumer harm and assess a civil money penalty against Tucci.

[1] 591 U.S. 71 (2020).
[2] 603 U.S. 109 (2024).
[3] 481 U.S. 412 (1987).

## I. The Court should award legal restitution for the full amount of consumer harm

Tucci asserts, with little explanation, that the Bureau seeks equitable restitution, and as such the restitution amount must be limited to net profits under *Liu*. Tucci is wrong. As explained in its opening memorandum, the Bureau seeks legal restitution, not equitable restitution, and the appropriate amount of restitution to award in this case is the full amount of consumer harm. Tucci does not, and cannot, dispute two crucial points raised by the Bureau. First, the plain language of the CFPA confers on courts the jurisdiction to grant both legal and equitable relief. In contrast to the SEC Act, which expressly authorizes equitable relief but not legal relief,[4] the CFPA expressly authorizes both legal and equitable relief and specifically enumerates restitution, refund of moneys, and damages as forms of relief that courts may grant.[5] Second, the Bureau seeks personal liability against Tucci to pay a sum of money (i.e., legal restitution), not the return of particular, traceable funds or property (i.e., equitable restitution).[6] Under these circumstances, courts have recognized that such awards of legal restitution are not governed by *Liu* and "may be measured by the full amount lost by consumers rather than limiting damages to a defendant's net profits."[7]

---

[4] *Liu v. SEC*, 591 U.S. 71, 74 (2020); 15 U.S.C. § 78u(d)(5).

[5] 12 U.S.C. § 5565(a)(1), (a)(2)(B), (C), (E); *see also Integrity Advance, LLC, v. CFPB*, 48 F.4th 1161, 1176 (10th Cir. 2022) ("*Liu* involved a disgorgement order under a statute allowing only equitable relief" while the CFPA provides jurisdiction "to grant any appropriate legal or equitable relief").

[6] *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *CFPB v. CashCall, Inc.*, 124 F.4th 1209, 1218-19 (9th Cir. 2025).

[7] *CFPB v. CashCall, Inc.*, 124 F.4th 1209, 1218 (9th Cir. 2025) (internal quotation marks omitted), amended on other grounds, 2025 WL 1194987, *7 (9th Cir. Apr. 24, 2025); *CFPB v. Commonwealth Equity Group, LLC*, 752 F.Supp.3d 378, 410 (D. Mass. 2024) (awarding legal restitution of all fees paid by consumers where defendants took advance fees in violation of the TSR and engaged in deception); *CFPB v. Mortgage Law Group, LLP*, No. 14-CV-513-WMC, 2022 WL 3027031, at *3 (W.D. Wis. Aug. 1, 2022) (concluding that award of legal restitution based on net revenues is consistent with *Liu*).

Tucci's apparent contention that the Court cannot award restitution against him because the Bureau has not identified any harmed customers by name is also wrong.[8] The Bureau alleged, and the Court found, that FDATR and Tucci charged consumers fees for debt-relief and credit-repair services before permitted to do so under the Telemarketing Sales Rule.[9] Because Defendants took illegal advance fees from all customers when no payment was due or owed, every customer was harmed. With respect to harm related to deception, the Bureau need not identify customers by name, but rather must show "that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product."[10] The Bureau readily met this standard—the Court has already found that Defendants engaged in deception and FDATR had paying customers, and the Bureau has shown that Defendants' misrepresentations were spread widely through radio advertisements soliciting consumers nationwide and on its website.[11]

Tucci also asserts, without evidence, that the Bureau's "accounting is based on the incomplete gathering of CRM results that simply relies on the number of customers contacted" and that "calculations of customer money damages … have never been presented to this court."[12] But the Bureau has repeatedly explained that it obtained complete customer transaction data from the customer relationship management (CRM) tool used by FDATR, which includes

[8] ECF No. 128, Def. Tucci's Response to Pl.'s Post-Summ. J. Mem. On Restitution and Civil Money Penalties (Def. Tucci's Remedies Response) at 3.
[9] ECF No. 1, Complaint at ¶¶ 28-38; ECF No. 50, Default J. and Order Against FDATR at ¶¶ 11, 13-14; ECF No. 106, Memorandum Opinion and Order (granting summary judgment as to Tucci's liability) at pp. 8-10.
[10] *FTC v. Figgie Int'l, Inc*., 994 F.2d 595, 605-06 (9th Cir.1993).
[11] ECF No. 50, Default J. and Order Against FDATR at ¶¶ 11, 12, 15, 17, 20; ECF No. 106, Mem. Opinion and Order (granting summary judgment as to Tucci's liability) at pp. 10-11; ECF No. 45-1, Mem. in Supp. of Pl.'s Mot. Default J. Against FDATR (Pl.'s Default J. Mem.) at 2, 4; ECF No. 80-1, Mem. in Supp. of Pl.'s Mot. Summ. J. (Pl.'s Summ. J. Mem.) at pp. 3, 6-7 and ECF No. 80-2, Statement of Facts at ¶¶ 10-15, 53.
[12] ECF No. 128, Def. Tucci's Remedies Response at 3.

customer payment data, and analyzed that data to determine the amount of consumer harm.[13] Tucci provides no credible evidence to refute the Bureau's calculations.

## II. The Court is authorized to award civil money penalties

Tucci's argument that a civil money penalty cannot be assessed without a jury trial fundamentally misunderstands both the Seventh Amendment and relevant Supreme Court precedent. In *SEC v. Jarkesy*, the Supreme Court determined that the SEC could not use its administrative tribunal to seek civil penalties against a defendant for securities fraud,[14] but it did not change the longstanding rules governing summary judgment and the assessment of civil penalties.[15] Here, the Bureau filed this action in federal court, not its administrative tribunal. And it is well-established that a court's granting of summary judgment, which obviates the need for a jury trial, does not infringe the Seventh Amendment.[16] Having granted summary judgement as to Tucci's liability, long-standing precedent dictates that the Court may now determine the civil penalty to assess against Tucci without a jury trial.[17]

---

[13] ECF. No. 45-1, Pl.'s Default J. Mem. at 15-16; ECF No. 80-1, Pl.'s Summ. J. Mem. at 16-17; ECF. No. 103, Reply to Def. Tucci's Opp. to Pl.'s Mot. For Summ. J. at 9; *see also CFPB v. Consumer Advocacy Center Inc*., No. 19-cv-1998, 2023 WL 5162392, *12-14 (court entered legal restitution in the amount of net revenues (the amount customers paid minus refunds and chargebacks) based on calculations presented to the court by the Bureau).

[14] 603 U.S. 109 (2024).

[15] *See SEC v. Sargent*, 129 F.4th 1, 18 (1st Cir. 2025) (the district court can award a civil penalty without a jury trial when there is a ruling, like summary judgment, that obviates the need for a jury trial); *see SEC v. Collector's Coffee, Inc*., No. 19-cv-4355, 2025 WL 752221, *6-7 (S.D.N.Y. 2025) ("To be precise, *Jarkesy* was not a challenge to the practice of federal judges finding facts relating to remedies in SEC enforcement actions, but instead was a challenge to the statute authorizing the SEC to determine liability and assess penalties against a defendant before an in-house administrative law judge.").

[16] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979).

[17] *See Tull v. U.S.*, 481 U.S. 412, 425-27 (1987) (Seventh Amendment does not require a jury trial for the determination of a civil penalty); *Collector's Coffee, Inc*., 2025 WL 752221 at *7 ("*Tull v. United States* settled that the Seventh Amendment does not require a jury determination of remedies in enforcement actions brought by a governmental agency in federal court.); *SEC v. Sargent*, 129 F.4th 1, 18 ("Courts thus regularly impose civil penalties in cases resolved at summary judgment."); *SEC v. CellPoint*, LLC, No. 21-cv-01574, 2025 WL 726523, *1-2, 11-15 (D. Col., March 4, 2025) (court awarded civil penalties after granting summary judgment to SEC).

In authorizing the imposition of civil money penalties, the CFPA provides that any person who commits an act that violates any provision of Federal consumer financial law shall pay a civil penalty for each day during which such violation continues.[18] Here, each time Defendants charged an illegal advance fee, they committed an act that violated the TSR, and each such act constitutes a separate violation.[19] Likewise, each time Defendants made a deceptive representation, they committed an act that violated the TSR and CFPA, and each such act constitutes a separate violation. In determining the number of violative "acts" that Defendants committed for purposes of calculated a proposed civil money penalty, the Bureau proposed limiting the number to one violation per customer, even though some customers made multiple advance fee payments and received multiple deceptive representations. Tucci therefore misunderstands what constitutes a violation when he contends that "civil money penalties must be calculated based on the duration of violations, not the number of affected consumers."[20]

But even if the Court elected to calculate the penalty based on the number of days during which Defendants operated their illegal scheme, as Tucci suggests,[21] because Tucci does not

[18] 12 U.S.C. § 5565(c) ("Any person that violates, through any *act* or omission, any provision of Federal consumer financial law shall forfeit and pay a civil penalty pursuant to this subsection.") (emphasis added).

[19] *See* 16 C.F.R. § 310.4(a)(5)(i) (each advance "fee" requested or received as to "the customer" is a violation of the TSR); 16 C.F.R. § 310.4(a)(2) (each advance "fee" requested or received as to "a person" constitutes a violation); 16 C.F.R. § 310.3(a)(2)(iii) (each deceptive representation as to "a sales offer" constitutes a violation); 16 C.F.R. § 310.3(a)(2)(x) (each deceptive representation made to "a customer" constitutes a violation). *Cf FTC v. Day Pacer LLC*, 125 F.4th 791, 810-12 (7th Cir. 2025), *reh'g denied*, No. 23-3310, 2025 WL 723020 (7th Cir. Mar. 6, 2025) (analyzing the civil penalty provision of the FTC Act, 15 U.S.C. § 45(m), with language similar to the CFPA, the Seventh Circuit held that the district court's determination of civil penalties should be based on the number of calls the defendants made to consumers in violation of the TSR); *U.S. v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020) (affirming district court's award of penalties assessed "per improper call" in a TSR case involving violations of do-not-call lists).

[20] ECF No. 128, Def. Tucci's Remedies Response at 3.

[21] *Id.* at 3.

dispute the appropriate penalty tier, tier amounts, or statutory factors, the penalty amount would be $21,219,153, assuming only one category of violation throughout that period:

- September 16, 2014, to November 1, 2015, equals 412 days and the effective Tier 1 penalty amount was $5,000—multiplying 412 by $5,000 results in a penalty amount of $2,060,000;

- November 2, 2015, to October 16, 2017, equals 715 days and the effective Tier 1 penalty was $6,323 per violation—multiplying 715 by $6,323 results in a penalty amount of $4,520,945; and

- October 17, 2017, to January 22, 2019, equals 463 days and the effective Tier 2 penalty amount was $31,616 per violation—multiplying 463 by $31,616 results in a penalty amount of $14,638,208.

This amount could also be doubled, tripled, or quadrupled, because this case involves multiple categories of violations: (1) taking illegal advance fees for debt-relief services in violation of the TSR (Count I); (2) taking illegal advance fees for credit-repair services in violation of the TSR (Count II); and (3) engaging in deception under both (a) the TSR (Count III) and (b) the CFPA (Count IV). Therefore, under Tucci's proposal the penalty amount could be $21,219,153 to $84,879,012, if the Court imposed a penalty against Tucci for each violation category. The Court should adopt the Bureau's proposal because the number of consumers who paid illegal advance fees is a reasonable proxy for the number of violations in this case, whereas Tucci's proposal fails entirely to take into account the number of violative acts he committed. And such an award would be consistent with the penalty entered against FDATR.

Dated: April 25, 2025

Respectfully submitted,

/s/ Carmen Christopher
Carmen L. Christopher (CA Bar No. 231508)
Telephone: (202) 754-0329
carmen.christopher@cfpb.gov
Kristina D. Betts (AZ Bar No. 024859)
Telephone: (202) 834-2723
kristina.betts@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington DC, 20552

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*