UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>    Plaintiff,<br><br>    v.<br><br>FDATR, et al.,<br><br>    Defendants. | No. 20 CV 6879<br><br>Judge Georgia N. Alexakis |

## ORDER

On January 10, 2025, the Court entered summary judgment for plaintiff Bureau of Consumer Financial Protection[1] against defendant Dean Tucci on the issue of liability for violating the Consumer Financial Protection Act ("the Act") and the Telemarketing Sales Rule ("the TSR"). *See Bureau of Consumer Fin. Prot. v. FDATR, Inc.*, 20 CV 6879, 2025 WL 71734, at *6 (N.D. Ill. Jan. 10, 2025). Because a default judgment and order already has been entered against defendant FDATR, Inc., [50], all that remains is to determine the appropriate restitution and civil monetary penalty as to Tucci for those violations. For the reasons that follow, the Court finds that restitution in the amount of $2,117,133.28 and a civil monetary penalty of $41,123,897 are warranted by the record and the law. In addition, the Court denies Tucci's motion to dismiss for want of prosecution. [116].

## STATEMENT

The Court laid out the relevant procedural and factual background in its memorandum opinion granting the Bureau's motion for summary judgment against Tucci on the issue of liability. [106]. At the end of its opinion, the Court asked the parties to submit supplemental memoranda of law addressing restitution and civil money penalties in light of *Consumer Financial Protection Bureau v. Consumer First Legal Group, LLC*, 6 F.4th 694 (7th Cir. 2021), and *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024). *Id.* at 12–13. The Court has since received and reviewed the parties' briefing on the issue. [122], [128], [129].

---

[1] Now the Consumer Financial Protection Bureau.

*Restitution*

The Act gives the Court "jurisdiction to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law." *See* 12 U.S.C. § 5565(a). These forms of relief include restitution and civil money penalties. § 5565(a)(2)(C), (H).

The Bureau seeks restitution in the amount of $2,117,133.28, its unrebutted calculation of defendants' net revenue (gross receipts minus refunds to consumers), which the Bureau characterizes as "the total known amount of outstanding consumer harm resulting from Tucci and his company's illegal conduct." [80-1] at 16. The Bureau initially described this remedy as "equitable restitution," [80] at 3; [80-1] at 16, although it later amended its description to "legal restitution," [81]. To the extent the Bureau initially described the remedy sought as an equitable one, that description triggered questions under *Consumer First*. There, the Seventh Circuit held that the appropriate calculation for "all categories of equitable relief"—including equitable restitution—should be based on net *profits* rather than net revenue. 6 F.4th at 710–11 (applying *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71 (2020)).

At the same time, the Supreme Court has warned against "elevat[ing] form over substance" by fixating on "the particular label affixed to" a form of relief. *See Liu*, 591 U.S. at 76 n.1 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)); *see also Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 124 F.4th 1209, 1218 (9th Cir. 2025) ("[W]hether the relief being sought was equitable or legal depends not on the Bureau's characterization, but rather on the nature of the underlying remedies sought.") (cleaned up). The Supreme Court has further instructed that "restitution is a legal remedy when ordered in a case at law and an equitable remedy when ordered in an equity case, and whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (cleaned up).

The Court therefore must look to the nature of the restitution the Bureau seeks, rather than whatever label the Bureau may attach to it. Tucci agrees. *See* [128] at 2 ("[T]he distinction between equitable restitution depends on the nature of the remedy, not the plaintiff's characterization."). The Supreme Court has explained the difference between legal and equitable restitution as follows:

> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law … In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. …

> In contrast, a plaintiff could seek restitution *in equity* … where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. … But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor … Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Knudson*, 534 U.S. at 213–14 (cleaned up).

The Bureau argues that the restitution it seeks is legal in nature because it "does not seek the return of money or property identified as belonging in good conscience to consumers that can be traced to particular funds or property in Tucci's possession." [122] at 3 (citing *Knudson*, 534 U.S. at 213). Instead, "the Bureau seeks a judgment imposing personal liability [on Tucci] to pay a sum of money." *Id.* For his part, Tucci agrees that "the Bureau seeks to impose personal liability on Tucci," [128] at 2, though understands this to "align[] with equitable principles under *Liu*," *id.* Tucci does not indicate what part of *Liu*—which does not discuss personal liability– he relies on for this conclusion. Tucci's failure to do so means that he has not provided the Court any legal authority that might counter the Bureau's arguments. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is to make it easy for the court to rule in his client's favor; at a minimum, this means stating the legal grounds for [an argument].").

There is thus no dispute that the nature of the remedy the Bureau seeks is personal liability against Tucci. And Tucci does not, for example, indicate how particular funds could be traced, nor does the Bureau seek "particular funds or property" in Tucci's possession. *Knudson*, 534 U.S. at 214. Accordingly, the Court agrees with the Bureau that under *Knudson* the restitution here is properly understood as a legal rather than equitable remedy. And the Court sees nothing in *Liu* or *Consumer First* that precludes awarding legal restitution based on net revenue rather than net profit, nor have other courts that have considered the question. *See CashCall*, 124 F.4th at 1218 (upholding award of $134,058,600 in legal restitution based on net revenues); *Consumer Fin. Prot. Bureau v. Mortg. L. Grp., LLP*, No. 14-CV-513-WMC, 2022 WL 3027031, at *3 (W.D. Wis. Aug. 1, 2022) (recharacterizing Bureau's restitution claim as legal and awarding based on net revenue).

Tucci offers no objection to the Bureau's calculation of the restitution amount beyond *Liu*; or, indeed, any alternative number. Because the Bureau's calculation is reasonable, permissible under *Liu*, and well-supported by unchallenged record

3

evidence, the Court finds that legal restitution in the amount of $2,117,133.28 is warranted.

*Civil Money Penalties*

Under the Act, "[a]ny person that violates, through any act or omission, any provision of Federal consumer financial law shall forfeit and pay a civil penalty." 12 U.S.C. § 5565(c)(1). The Act further authorizes courts to assess and determine the amount of the civil penalty, stating that "[t]he court … shall have jurisdiction to grant … relief," including "civil money penalties." *Id.* at §§ 5565(a)(1), (a)(2)(H). This statutory language notwithstanding, the Court asked for supplemental briefing on whether the Supreme Court's recent decision in *Jarkesy* affected its ability to assess a civil money penalty. *See* 603 U.S. at 120–21 (defendant entitled to a jury trial under Seventh Amendment when SEC sought civil money penalties for securities fraud).

In its responsive memorandum, the Bureau relies primarily on *Tull v. United States*, 481 U.S. 412 (1987). *Tull* involved the Clean Water Act, which like the Act, authorizes trial judges to assess and determine the amount of a civil penalty. *Id.* at 425–27. *Tull* held that "the Seventh Amendment required that petitioner's demand for a jury trial be granted to determine his liability, but that the trial court and not the jury should determine the amount of penalty, if any." *Id.* at 427; [122] at 6–9. Under *Tull*, therefore, the Court may determine the amount of the civil penalty to be assessed against Tucci.

With respect to any impact on *Tull* from *Jarkesy*, as the Bureau points out, *Jarkesy* cites *Tull* extensively, making it unlikely that *Jarkesy* implicitly abrogated *Tull* on its key point. [122] at 8 n.37; *see also Jarkesy,* 603 U.S. at 120 ("Our analysis of this question follows the approach set forth in … *Tull*."). Moreover, *Jarkesy* involved administrative tribunals, rather than Article III courts. *United States Sec. & Exch. Comm'n v. Halitron, Inc.*, No. 24-1052, 2025 WL 678776, at *4 (2d Cir. Mar. 3, 2025) ("*Jarkesy* addressed a different Seventh Amendment question—whether the SEC may adjudicate certain matters 'in-house' before an administrative law judge 'rather than before a jury in federal court.'"). The Court therefore agrees with the Bureau that *Jarkesy* does not cast doubt on *Tull's* conclusion that a trial court, rather than a jury, can assess and determine the amount of a civil penalty.

Tucci argues that "[t]he Bureau's reliance on *Tull* … is misplaced" because "*Jarkesy* further clarified that the Seventh Amendment applies to civil penalty cases brought by federal agencies, emphasizing that such actions are legal in nature and closely resemble common law claims." [128] at 2. But even assuming that Tucci had a Seventh Amendment right to a jury trial *for liability*, that does him no good now: he lost on liability at summary judgment, and "[t]he Seventh Amendment does not entitle parties to a jury trial when there are no factual issues for a jury to resolve." *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006). *See also Sec.*

4

*& Exch. Comm'n v. TKO Farms, Inc.*, No. 8:22-CV-00941-RGK-KES, 2024 WL 4896204, at *1 (C.D. Cal. Sept. 20, 2024) ("*Jaresky's* holding that parties may have the right to a jury trial for liability would not abrogate *Tull's* holding that parties have no right to a jury trial for remedies."). The Court therefore concludes that it can assess a civil money penalty without a jury trial.

The Court now turns to the penalty amount. The Bureau calculates the appropriate civil money penalty as $41,123,897, based on its count of the number of unique customers affected and the level of the violation.[2] [80-1] at 17–19. The Bureau's calculation assumes each unique consumer represents a single violation of the Act, with the violations before FDATR and Tucci were sued by the State of Illinois in October 2017—the vast majority—counted as ordinary (Tier 1) violations, and those occurring after the lawsuit are counted as reckless (Tier 2) violations. [80-1] at 18 n.109.

Tucci argues that this number is wrong because "[u]nder 12 U.S.C. § 5565(c)(2), civil money penalties must be calculated based on the duration of violations, not the number of affected consumers." [128] at 3. As a result, Tucci contends that "[t]he Bureau's method of calculating penalties based on the number of customers inflates the penalty amount and is inconsistent with the statutory framework." *Id*. Tucci then suggests that "the penalties in this case should be recalculated based on violation days," though he does not provide any such calculation. *Id*.

Perhaps Tucci should have done that math, because the Bureau's approach is more generous to Tucci than his own. Tucci is correct that § 5565(c)(2) directs that penalties should be assessed "for each day during which such violation … continues," but these penalties are *per violation*. And as the Bureau notes, the $41,123,897 number assumes that each customer was subjected to *a single violation* that lasted *a single day*. [129] at 5. Under the Bureau's calculation, the penalty related to a hypothetical consumer that was subject to 3 illegal advance fees and 3 deceptive representations by defendants might be just $5,000. Under the method Tucci proposes—assessing penalties per violation per day—the penalty related to that same hypothetical customer would be at least $30,000. The Bureau, which diligently did the math Tucci did not, concludes that Tucci's approach could put the civil money penalty as high as $84,879,012, more than double what it asks for. [129] at 6.

Tucci next contends that "[t]he Seventh Circuit's decision in *Consumer First* further supports this interpretation" that the civil money penalty should be lower. [128] at 3. This is because, in Tucci's gloss, "the [Seventh Circuit] vacated civil penalties that were improperly calculated based on inflated metrics and remanded for recalculation consistent with statutory requirements." *Id*. While Tucci is correct

---

[2] At the relevant time, the penalty amounts were between $5,000–$6,323 per Tier 1 (ordinary) violation, $25,000–$31,616 per Tier 2 (reckless) violation, and $1,000,000–$1,264,622 per Tier 3 (knowing) violation. [80-1] at 17 (citing 12 C.F.R. § 1083.1).

that *Consumer First* remanded the civil money penalty for recalculation, this is because the Seventh Circuit concluded that the "civil penalties were excessive because they were based on a miscalculation of the penalty period and on an erroneous finding that Appellants acted recklessly." *Consumer First*, 6 F.4th at 710. But, as discussed above, if the Bureau has miscalculated the "penalty period," it has does so in Tucci's favor. And Tucci does not challenge the number of affected consumers, number of total violations, or the scienter of those violations, all of which are well-supported by the record evidence. *Consumer First* thus does not suggest that the penalty here should be lower.

Finally, Tucci argues that "calculations of customer money damages, or any damages for that matter, have never been presented to this court by the Bureau" and appears to suggest the civil money penalty is inflated as a result. [128] at 3. But 12 U.S.C. § 5565(c) does not require calculation of damages to assess civil money penalties, so this is entirely beside the point. Tucci might have argued that damages were minimal and thus a mitigating factor, *see* 12 U.S.C. § 5565(c)(3), but he has not done so—in fact, he does not discuss the § 5565(c)(3) mitigating factors at all—and has therefore waived any mitigation arguments under that provision.

In light of the above, the Court finds that the Bureau's calculation of the civil money penalty is more than reasonable and is supported by the statute and record evidence. The Bureau's asked-for amount of $41,123,897 as to Tucci is thus warranted.

### *Tucci's Motion To Dismiss*

Finally, Tucci has asked the Court to dismiss this matter entirely for lack of prosecution and to strike the Bureau's filings, [116], arguing that over the last several months, there has been an "effective shutdown of the [Bureau]" under President Trump's administration, [123] at 1–2.

Under Rule 41(b), a defendant may move to dismiss an action if the plaintiff fails to prosecute the case or fails to comply with the Federal Rules of Civil Procedure or a court order. Courts exercise this sanction sparingly and "only when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *See Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699 (7th Cir. 2014) (cleaned up). There is no such record in this matter. Tucci's motion to dismiss for want of prosecution is therefore denied.

6

**CONCLUSION**

For the reasons stated above, the Court finds that the Bureau's asked-for restitution of $2,117,133.28 and civil monetary penalty of $41,123,897 are warranted by the record and the law. Tucci's motion to dismiss for want of prosecution [116] is denied. The Bureau is directed to submit a Word version of its proposed order seeking injunctive and monetary relief to the Court's proposed order inbox by 5/8/25.

Date: 5/1/25

Georgia N. Alexakis
U.S. District Judge